J-S47040-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ELWOOD JOHNSON | |
| Appellant | No. 503 EDA 2014 |

Appeal from the PCRA Order of January 17, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0009065-2006

BEFORE:  MUNDY, J., OLSON, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED OCTOBER 22, 2014**

Elwood Johnson appeals the order entered on January 17, 2014, dismissing his fourth petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46.  In the underlying case, Johnson was convicted by a jury of two counts each of possession of a controlled substance, corrupt organizations, and criminal use of a communication facility, and one count each of possession of a controlled substance with intent to deliver, criminal conspiracy, and dealing in proceeds of unlawful activities.[1]  We affirm.

In our August 6, 2010 memorandum affirming Johnson's judgment of sentence on direct appeal, we set forth the following abbreviated factual and procedural history of this case:

---

[1]    35 P.S. § 780-113(a)(16); 18 Pa.C.S. §§ 911, 7512; 35 P.S. § 780-113(a)(30); and 18 Pa.C.S. § 903, 5111, respectively.

In September 2006, the authorities began investigating [Johnson's] involvement in a drug trafficking organization led by Jose Cabrera. A confidential informant ("Informant 1") told the authorities [Johnson] possessed and sold cocaine. The authorities subsequently used Informant 1 to conduct three controlled purchases of narcotics from [Johnson]. During each transaction, [Johnson] utilized the same black Honda. Through surveillance, the police confirmed [Johnson] would often travel in this vehicle to his mother's residence at 1317 Locust Street in Norristown. In October 2006, a second confidential informant ("Informant 2") told police [Johnson] stored illegal drugs at 1317 Locust Street.

The authorities subsequently obtained court orders to intercept the telephone conversations of [Johnson], Mr. Cabrera, Abraham Martinez, and other members of the Cabrera organization. The intercepted telephone conversations revealed [Johnson] had purchased cocaine from Mr. Cabrera on October 12, 2006. Conversations between [Johnson] and Mr. Cabrera confirmed [Johnson] was selling this cocaine, and [Johnson] anticipated purchasing additional cocaine from Mr. Cabrera. On October 25, 2006, the authorities executed a search warrant at 1317 Locust Street, recovering 248.41 grams of cocaine. That same day, the authorities raided other properties associated with the Cabrera organization. The authorities also arrested Mr. Cabrera and Mr. Martinez, both of whom later agreed to testify against [Johnson] at trial.

On December 24, 2007, [Johnson] filed a pretrial motion to suppress the evidence obtained during the search of 1317 Locust Street. In his motion, [Johnson] argued the police illegally obtained the evidence, because probable cause did not exist to support the issuance of the search warrant. [Johnson] further argued the search warrant contained material misrepresentations and omissions. On September 3, 2008, the court denied [Johnson's] suppression motion.

Following trial, a jury found [Johnson] guilty of [the above-stated counts]. On February 5, 2009, the court sentenced [Johnson] to an aggregate term of sixteen and one-half (16½) to thirty-three (33) years' imprisonment. On February 11, 2009, [Johnson] filed post-sentence motions, challenging the weight and sufficiency of the evidence and the discretionary aspects of his sentence. The court denied [Johnson's] post-sentence motions on June 25, 2009.

***Commonwealth v. Johnson***, 2033 EDA 2009, slip op. at 1-3 (Pa. Super. August 6, 2010) (unpublished memorandum).

On direct appeal, Johnson challenged the sufficiency and the weight of the evidence to sustain his convictions. Johnson also asserted a third issue, challenging the trial court's ruling denying his motion to suppress evidence obtained from his residence. We rejected all three issues, and, on March 9, 2011, our Supreme Court denied Johnson's petition for allowance of appeal. ***See Commonwealth v. Johnson***, 20 A.3d 485 (Pa. 2011) (table).

The PCRA court related the subsequent procedural history as follows:

On April 29, 2011, [Johnson] filed, *pro se*, a timely first petition pursuant to the [PCRA], raising numerous claims of ineffectiveness [of counsel] against [trial counsel]. By order dated May 4, 2011, the undersigned appointed Henry S. Hilles, III, Esquire, to represent [Johnson] as PCRA counsel. On July 26, 2011, Mr. Hilles forwarded to this court a petition to withdraw as counsel and a "no merit" letter, pursuant to ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*), stating Mr. Hilles' opinion that [Johnson] was not entitled to PCRA relief.

On September 26, 2011, [Johnson] filed, *pro se*, a document entitled "Supplemental PCRA Motion." This filing appeared to consist entirely of a collection of documents that had already been filed of record. [Johnson] asked this court to consider these items in determining his PCRA petition, and we did so. A copy of [Johnson's] September 26, 2011 filing was forwarded by the court to Mr. Hilles.

Following our own independent review of the record, we determined that [Johnson] was not entitled to PCRA relief, and— on October 3, 2011—we notified [Johnson], in accordance with Pa.R.Crim.P. 907(1), of this court's intention to dismiss his first PCRA petition without a hearing. On October 26, 2011, the undersigned received a copy of [Johnson's] *pro se* response to the court's Rule 907(1) Notice. Following review, we determined

that said response raised no issue entitling [Johnson] to PCRA relief. Accordingly, by final order dated December 12, 2011, the undersigned dismissed [Johnson's] first PCRA petition and granted Mr. Hilles' petition to withdraw as [Johnson's] PCRA counsel.

On December 27, 2011, [Johnson] filed a timely notice of appeal to the Superior Court. On September 20, 2012, [Johnson] filed, *pro se*, a second PCRA petition. The undersigned dismissed this second PCRA petition without prejudice as premature, given that it was filed while appellate review of the dismissal of [Johnson's] *first* PCRA petition remained pending. **See Commonwealth v. Lark**, 746 A.2d 585 (Pa. 2002).

By *per curiam* memorandum dated December 18, 2012, the Superior Court vacated our order dismissing [Johnson's] first PCRA petition on the grounds that the record did not reflect that PCRA counsel—Mr. Hilles—had reviewed and addressed either [Johnson's] September 26, 2011 "Supplemental PCRA Motion" or [Johnson's] *pro se* October 26, 2011 response to this court's Rule 907(1) Notice, which [Johnson] had filed before Mr. Hilles was granted leave to withdraw as [Johnson's] counsel. The Superior Court remanded the case "for the reappointment of counsel to review [Johnson's] *pro se* correspondence, and, if necessary, amend his initial **Finley** letter in order to document his reasons why [Johnson's] claims are meritless."

In accordance with the directive of the Superior Court, the undersigned reappointed Mr. Hilles as [Johnson's] PCRA counsel by order dated December 20, 2012, directing Mr. Hilles to review [Johnson's] "Supplemental PCRA Motion" and [Johnson's] response to the court's Rule 907(1) Notice.

\* \* \* \*

On May 31, 2013, [following a hearing,] the undersigned entered this [c]ourt's final order dismissing [Johnson's] first PCRA petition, stating our reasoning for the dismissal at some length in our order.[4] [Johnson] did not appeal from our May 31, 2013 final order.

_____

[4] Our order also dismissed as premature and without prejudice a *third* PCRA petition that [Johnson] had filed on

- 4 -

December 31, 2012, before litigation of his *first* PCRA petition had concluded. ***See Lark***, *supra*.

On July 18, 2013, [Johnson] filed, *pro se*, the instant PCRA petition, his fourth. On September 17, 2013, the Commonwealth filed an Answer and Motion to Dismiss said petition. On September 30, 2013, [Johnson] filed a response to the Commonwealth's Answer and Motion to Dismiss.

Upon review of the voluminous record in this case, the undersigned determined that the claims raised in [Johnson's] fourth PCRA petition were time-barred. Accordingly, on January 2, 2014, the undersigned entered this court's Notice pursuant to Pa.R.Crim.P. 907(1), informing [Johnson] of our intention to dismiss his fourth PCRA petition without a hearing. [Johnson] filed a timely response to our Rule 907(1) Notice. Determining that said response failed to establish [Johnson's] entitlement to PCRA relief or to raise any issue requiring a hearing, the undersigned entered this court's final order dismissing defendant's fourth PCRA petition on January 17, 2014.

[Johnson] filed his notice of appeal to the Superior Court of Pennsylvania on February 11, 2014. On February 25, 2014, [Johnson] filed his [concise] statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

PCRA Court Opinion ("P.C.O."), 4/14/2014, at 2-5 (citations modified;

footnote omitted; emphasis in original).

Before this Court, Johnson raises the following issues:

I.    Did not the PCRA court err and deny [Johnson] due process of law under the state and federal constitution[s] and [Johnson's] right to a proper legal evaluation of the reliability and effect of [***Brady***] material[2] by dismissing [Johnson's] petition as untimely?

---

2    ***See Brady v. Maryland***, 373 U.S. 83, 87 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

II. Did not the PCRA court err by dismissing [Johnson's] PCRA petition as untimely where [Johnson] asserts that the evidence [Johnson] presented in [Johnson's] PCRA petition constitutes previously undisclosed [*Brady*] material and after-discovered evidence placing [Johnson] squarely within the timeliness exceptions to the one-year limitation period?

Brief for Johnson at 3.

Our standard of review on appeal from an order denying a PCRA petition is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *See Commonwealth v. Ragan*, 923 A.2d 1169, 1170 (Pa. 2007). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *See Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001). However, before we may review the PCRA court's decision substantively, we must confirm our jurisdiction to consider Johnson's petition.

It is well-established that the PCRA time limits are jurisdictional, and must be strictly construed, regardless of the potential merit of the claims asserted. *Commonwealth v. Leggett*, 16 A.3d 1144, 1145 (Pa. Super. 2011); *Commonwealth v. Murray*, 753 A.2d 201, 202-03 (Pa. 2000), *abrogated on other grounds by Commonwealth v. Brown*, 943 A.2d 264 (Pa. 2008). "[N]o court may properly disregard or alter [these filing requirements] in order to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner." *Murray*, 753 A.2d at 203; *see Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 783 (Pa. 2000).

Despite facial untimeliness, a tardy PCRA petition nonetheless will be considered timely if (but only if) the petitioner pleads and proves one or more of the exceptions to the one-year time limit enumerated in subsection 9545(b) of the PCRA, which provides:

> (1)  Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
>> (i)      the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>>
>> (ii)     the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>>
>> (iii)     the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.
>
> (2)  Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

42 Pa.C.S. § 9545(b).  When an appellant files a facially untimely petition under the PCRA, and fails to plead and prove one or more of the exceptions to the PCRA's one-year jurisdictional time limit, the petition is untimely and we must deny the appellant relief.  ***Gamboa-Taylor***, 753 A.2d at 783. Moreover, as reflected in the plain language of subsection 9545(b)(2), even when one of the exceptions may apply to a given petition, it will excuse the

untimeliness only if the petition was filed within sixty days of the date that the conditions underlying the exception came to light. *Id.* at 784.

The PCRA court aptly summarized the substance of [Johnson's] attempts to invoke the government interference and newly-discovered fact exceptions to the PCRA's jurisdictional one-year time bar as follows:

> [Johnson's] first claim is that the Commonwealth violated Pa.R.Crim.P. 564, governing amendments to the bills of information, by filing a complaint on November 24, 2006 that included charges that were not included in a complaint previously filed on October 30, 2006 that was subsequently withdrawn. [Johnson] contends that he was entitled to dismissal of the additional charges in the November 24, 2006 complaint because of the alleged violation of Rule 564, and because the affidavit of probable cause attached to the October 30, 2006 complaint did not establish probable cause for the additional charges added in the November 24, 2006 complaint.
>
> [Johnson] avers that he was not aware of the existence of his claim concerning the alleged violation of [Rule 564] until August 17, 2012, when he received a copy of the October 30, 2006 complaint for the first time. [Johnson] contends that this October 30, 2006 complaint constitutes newly-discovered evidence entitling him to a review on the merits of his claim under authority of § 9545(b)(1)(ii). [Johnson] further contends that the Commonwealth's "failure" to provide him with a copy of the October 30, 2006 complaint prior to August 17, 2012 constitutes a violation of [**Brady**, *supra*], establishing governmental interference with the presentation of his claim and entitling him to a review on the merits of the claim under authority of § 9545(b)(i).
>
> [Johnson's] second claim is that his trial counsel . . . provided him with ineffective assistance by stipulating to the entry into evidence at [Johnson's] April 28, 2008 suppression hearing of a lab report relating to criminal activity with which [Johnson] was not charged. [Johnson] avers that he was not aware of this claim until September 21, 2012, when he received a copy of the lab report for the first time. [Johnson] contends that the lab report constitutes newly-discovered evidence entitling him to a

review of the merits of his claim under authority of § 9545(b)(1)(ii). [Johnson] further contends that the Commonwealth's "failure" to provide him with a copy of the lab report prior to September 21, 2012 constitutes a violation of [**Brady**, *supra*], establishing governmental interference with the presentation of his claim and entitling him to a review on the merits of the claim under authority of § 9545(b)(1)(i).

P.C.O. at 8-9.

The PCRA court determined that Johnson failed to plead and prove that either exception applied to either claim, because Johnson failed to bring these claims within sixty days of the date the claim could have been presented. In effect, the PCRA court rejected Johnson's reliance on his 2012 receipt of the documents in question as the relevant time for triggering the applicable sixty-day clock.

With respect to the first issue, pertaining to Johnson's alleged ignorance of the October 30, 2006 complaint until August 2012, the PCRA court reasoned as follows:

[Johnson] has acknowledged being present at his preliminary arraignment on November 6, 2006, at which time he was informed of the charges as set forth in the October 30, 2006 complaint. [Johnson] has further acknowledged being present at his preliminary arraignment on November 24, 2006, at which time he was informed of the charges against him as set forth in the November 24, 2006 complaint—including the additional charges of which he was *not* informed on November 6, 2006 because they were *not* present in the October 30, 2006 complaint. [Johnson] thus knew on November 24, 2006 that he faced charges in addition to the charges of which he was informed on November 6, 2006; [Johnson] did *not* require a copy of the October 30, 2006 complaint to inform him of this fact. Any PCRA claim related to the propriety of the additional charges included in the November 24, 2006 complaint thus could—and should, through the exercise of reasonable

- 9 -

investigation and due diligence—have been raised in [Johnson's] first, timely PCRA petition.

*Id.* at 10-11 (emphasis in original). Thus, the PCRA court found that, because Johnson failed to plead and prove that he had raised the claim at issue within sixty days of when he could have done so, he could not gain the benefit of an exception to the PCRA's one-year time limit.

Johnson's second issue concerns lab evidence that was admitted against him at trial, which allegedly constitutes exculpatory or impeachment evidence. He argues that he received this evidence for the first time in September of 2012. The PCRA court found that this claim, too, was untimely raised for want of diligence:

> [Johnson] contends that [trial counsel] was ineffective for stipulating to the entry into evidence of this lab report because it related to criminal activity with which [Johnson] was not charged. [Johnson] contends that he could not have raised this claim in a timely fashion because he was not provided with a copy of the lab report until September 21, 2012. . . .
>
> The record reflects on its face that [Johnson] was present in the courtroom during his April 28, 2012 suppression hearing. The issues presented were whether an affidavit requesting a warrant for a search of the residence of [Johnson's] mother . . . established the requisite probable cause and, if so, whether that probable cause had "gone stale." It was the Commonwealth's contention that [Johnson] had sold cocaine that he had removed from the residence on three occasions to a confidential informant in "controlled buys." Although [Johnson] was not charged criminally for these controlled buys, the buys were offered by the Commonwealth as supporting the existence of probable cause for a search of the residence. During the course of the suppression hearing, [trial counsel]—in [Johnson's] presence—stipulated to a lab report that determined that the substance the Commonwealth contended was exchanged during the controlled buys was, in fact, 8.49 grams of cocaine.

> Given [Johnson's] presence at the time the stipulation was entered into—and explained—on the record, [Johnson] plainly cannot be heard to contend that it was not until September 21, 2012 that he learned that a lab report referencing criminal activity for which he was not charged had been entered into evidence at his suppression hearing. Far from providing [Johnson] with a newly-discovered fact, [Johnson's] receipt of the lab report on September 21, 2012 simply provided him with a new source for a fact of which he had been aware since April 28, 2008. Any PCRA claim related to the entry of the lab report into evidence at [Johnson's] April 28, 2008 suppression hearing could, and should, have been raised in [Johnson's] first timely PCRA petition.

*Id.* at 12-13.

The PCRA court's characterization of the procedural history and Johnson's awareness of the events is borne out by the record. Indeed, by Johnson's own reckoning, he learned of the existence of the October 30, 2006 complaint in May 2010, when a magisterial district judge transmitted to Johnson a copy of a docketing transcript that referred to the October 30, 2006 complaint. It was this discovery that occasioned what he asserts was a campaign lasting more than two years to obtain a copy of that complaint. Brief for Johnson at 11. Similarly, Johnson asserts that he only obtained the lab report at issue in September 2012 after requesting it "with a Federal subpoena from the National Medical Lab" earlier in that same month, "after requesting a copy from the Montgomery County District Attorney's Office and the Common Pleas Court for over two (2) years." *Id.* at 13. Thus, by his own assertions, Johnson was aware of the report, and presumably was interested in its contents, at least as early as September of 2010. In essence, Johnson concedes that he was aware of both documents, and

desirous of obtaining and reviewing them, at least as early as May 2010 (with respect to the initial criminal complaint) and September 2010 (with respect to the lab report).

These dates plainly precede multiple filings associated with Johnson's first PCRA petition. Johnson's *pro se* first PCRA petition was filed on April 29, 2011, well after he took an interest in both of the documents upon which he founds the instant claims for relief. Appointed PCRA counsel filed its "no merit" letter on May 4, 2011, later still. And it was not until July 26, 2011 that Johnson filed a *pro se* "Supplemental PCRA Motion." Johnson does not assert, and the record does not suggest, that Johnson raised either of these issues in any of those filings, either directly or by reference to his desire (and efforts) to obtain those documents.

This situates Johnson on the horns of a dilemma, either of which is fatal to his claims: If he **did** raise any aspect of the instant concerns in his first PCRA petition, the PCRA's bar on the relitigation of issues that have been "raised and decided in a proceeding collaterally attacking the conviction or sentence" would preclude review of those same issues now. **See** 42 Pa.C.S. § 9544(a)(3). Conversely, if he did not in any way address himself to concerns of which he plainly was aware at the time he filed his first petition, the issues would be waived under the PCRA because Johnson "could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding." 42 Pa.C.S. § 9544(b).

Johnson does not dispute that he was present and informed of the charges contained in the Commonwealth's October 30, 2006 criminal complaint at his first arraignment on November 6, 2006, and that he was present and informed of the charges contained in the Commonwealth's amended or substituted criminal complaint of November 24, 2006 at his second arraignment on November 24. The same essential reasoning applies to the complained-of lab report. Johnson does not dispute his presence at the 2008 pre-trial suppression hearing at which trial counsel stipulated to the admission of the report, the substance of which was addressed at that hearing. While counsel's stipulation effectively foreclosed challenging the report's admission before or during trial or on direct appeal, it could have been presented as a basis for an ineffective assistance of counsel claim in Johnson's first petition.[3]

_____

[3] As well, the information upon which the after-discovered fact exception is invoked "must not be of public record and not be facts that were previously known but presented through a newly discovered source." *Commonwealth v. Edminston*, 65 A.3d 339, 352 (Pa. 2013). Both of the documents in question were of record, and thus constitute public records. However, that fact does not necessarily foreclose Johnson's appeal to the government obstruction exception to the time bar, insofar as the government, by way of obstructive behavior, may undermine the basis for the public records rebuttal of a newly-discovered fact argument: After all, if the public records in question will not be disclosed by a government agency, as Johnson alleges in this case, the records are not "public" in the strong sense, especially for an inmate somewhat at the mercy of officials in possession of the documents in question. In any event, this latter observation does not relieve Johnson of establishing that he did not have prior knowledge of the subject documents sufficient to enable him to pursue these issues in his timely first PCRA petition.

The exceptions to the PCRA time bar are limited and to be construed strictly. Moreover, it is the petitioner's burden to plead **and** prove the application of one or more exceptions to the claims he wishes to bring in a facially untimely petition to establish the PCRA court's jurisdiction. It is not our place to interpolate arguments on behalf of a litigant where none is ventured by the litigant. *See In re S.T.S., Jr.*, 76 A.3d 24, 42 (Pa. Super. 2013) (quoting *Commonwealth v. B.D.G.*, 959 A.2d 362, 371-72 (Pa. Super. 2008)) ("This Court is neither obliged, nor even particularly equipped, to develop an argument for a party."). Consequently, we find that the PCRA court did not err or abuse its discretion in finding that it lacked subject matter jurisdiction over Johnson's fourth petition under the PCRA and dismissing Johnson's petition on that basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/22/2014

- 14 -